IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL DEWAYNE VICKERS, | ) | |
| Movant, | ) | |
| vs. | ) | No. 3:15-CV-3912-B-BH |
| | ) | No. 3:06-CR-0229-B |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

By *Special Order 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the amended *Motion Under 28 U.S.C. § 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* should be **GRANTED**, the sentence should be vacated, and the movant should be re-sentenced.

**I. BACKGROUND**

Michael Dewayne Vickers (Movant) challenges his federal conviction and sentence in Cause No. 3:06-CR-229-B. The respondent is the United States of America (Government).

By indictment filed on July 25, 2006, Movant was charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1). (*See* doc. 1.)[1] He pleaded not guilty and was convicted by a jury. (*See* doc. 52.) On March 22, 2007, the United States Probation Office (USPO) filed a Presentence Report (PSR) that applied the 2006 United States Sentencing Guidelines Manual (USSG). (*See* doc. 61 at 4, ¶ 14.) It found that Movant was an armed career criminal because his federal conviction under § 924(e) subjected him to an enhanced sentence based on his prior violent felony convictions for murder, burglary of a habitation, and unlawful delivery of a

---

[1] Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, 3:06-CR-229-B.

controlled substance, resulting in an offense level of 33. (*See id.* at 4-5, ¶¶ 10, 15, 16.) With a criminal history category of four, the resulting guideline range was 188-235 months. (*See id.* at 12, ¶ 56.) On July 5, 2007, Movant was sentenced to 190 months' imprisonment, which was then adjusted to 168 months to account for 22 months he had served on his related state case that would not be credited by the Bureau of Prisons. (*See* doc. 52.) The judgment was affirmed on appeal. (*See* doc. 64); *United States v. Vickers*, No. 07-10767 (5th Cir. Aug. 12, 2008).

Movant filed a motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255, and it was denied on January 12, 2011. (*See* No. 3:09-CV-1777, docs. 8, 9.) He filed a second § 2255 motion on December 8, 2015, and amended it on January 12, 2016. (*See* 3:15-CV-3912, docs. 1, 5.) After being appointed to investigate and pursue any potentially meritorious claims, the Federal Public Defender filed an unopposed motion to transfer the case to the United States Court of Appeals for the Fifth Circuit for authorization to file a second or successive §2255 motion, which was granted on April 26, 2016. (*See* docs. 9, 10, 11.) On May 27, 2016, the Fifth Circuit authorized Movant to file a successive § 2255 motion challenging the enhancement of his sentence for possession of a firearm by a felon under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii), based on *Johnson v. United States*, 135 S.Ct. 2551 (2015), and *Welch v. United States*, 136 S. Ct. 1257 (2016). (*See* doc. 12); *In re Vickers*, No. 16-10509 (5th Cir. May 27, 2016). He filed his amended § 2255 motion on June 26, 2016. (*See* doc. 14.)

Movant contends that the use of his 1982 Texas murder conviction to enhance his sentence under § 924(e) violated his right to due process under *Johnson* because it can only be a violent felony under § 924(e)'s residual clause, since "it is not enumerated [in that statute] and lacks force as an element, because it is a species of injury causation." (*See* doc. 14 at 7.) The Government filed a response on October 13, 2016. (*See* doc. 19.)

2

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted).  It is well-established that "a collateral challenge may not do service for an appeal."  *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review.  *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error.  *Shaid*, 937 F.2d at 232.  However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments."  *Massaro v. United States*, 538 U.S. 500, 503-04 (2003).  The Government may also waive the procedural bar defense.  *Willis*, 273 F.3d at 597.

## III.  ARMED CAREER CRIMINAL ACT

As the Supreme Court of the United States noted in *Johnson*,

Federal law forbids certain people—such as convicted felons, persons committed to mental institutions, and drug users—to ship, possess, and receive firearms. § 922(g). In general, the law punishes violation of this ban by up to 10 years' imprisonment. § 924(a)(2).  But if the violator has three or more earlier convictions for a "serious drug offense" or a "violent felony," [Section 924 of the Armed Career Criminal Act] increases his prison term to a minimum of 15 years and a maximum of life.  § 924(e)(1); *Curtis Johnson v. United States*, 559 U.S. 133, 136, 130 S.Ct. 1265, 176

L.Ed.2d 1 (2010).  The Act defines "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year ... that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.  § 924(e)(2)(B) (emphasis added).

135 S.Ct. at 2555-56.  Subsection (i) is known either as the force clause, *United States v. Lerma*, 877 F.3d 628, 630 (5th Cir. 2017), or as the elements clause, *United States v. Taylor*, 873 F.3d 476, 477 n.1 (5th Cir. 2017). The four offenses listed in subsection (ii) are referred to as the "enumerated offenses," *see United States v. Davis*, 487 F.3d 282, 285 (5th Cir. 2007), or as the "enumerated offenses clause," *Taylor*, 873 F.3d at 477 n.1.  The remainder of the subsection is known as the "residual clause," *Johnson,* 135 S.Ct. 2555-56.

*Johnson* held that the imposition of an increased sentenced under ACCA's residual clause violates the Constitution's guarantee of due process because the residual clause is unconstitutionally vague.  *Johnson*, 135 S. Ct. at 2563.[2]  After *Johnson*, a crime is a violent felony under ACCA only if it is one of the enumerated offenses, or if it qualifies under the force clause.  *United States v. Moore*, 711 F. App'x 757, 759 (5th Cir. 2017) (per curiam).

Here, the offense of which Movant was convicted, murder, is not an enumerated offense. Neither the Fifth Circuit Court of Appeals nor any district court within the circuit appears to have considered whether it qualifies as a violent felony under ACCA's force clause because it has as an element the use, attempted use, or threatened use of physical force.

---

[2]  This holding is retroactively available on collateral review.  *Welch v. United States*, 136 S.Ct. 1257, 1268 (2016).

4

## IV.  TEXAS MURDER STATUTE

The version of Texas Penal Code § 19.02(a) in effect at the time of Movant's murder

conviction in 1982 provided:

(a) A person commits an offense if he:

(1) intentionally or knowingly causes the death of an individual;

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that

(3) commits or attempts to commit a felony, other than voluntary or
involuntary manslaughter, and in the course of and in furtherance of the
commission or attempt, or in immediate flight from the commission or
attempt, he commits or attempts to commit an act clearly dangerous to human
life that causes the death of an individual.

Tex. Penal Code § 19.02 (1974); *see* Act of June 14, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex.

Gen. Laws 883, 913.

### A.    <u>Applicable Approach</u>

To determine whether a crime is a violent felony under the force clause, courts use either the

categorical approach or the modified categorical approach, depending on whether the statute setting

out the offense is indivisible or divisible.  *See Lerma*, 877 F.3d at 631; *United States v. Howell*, 838

F.3d 489, 494-95 (5th Cir. 2016).   An indivisible statute sets out "a single set of elements

[defining]", or "various means of committing," a single crime or offense.  *Lerma*, 877 F.3d at 631;

*Howell*, 838 F.3d at 497.  A divisible statute "lists multiple, alternative elements, and so effectively

creates 'several different ... crimes.'"  *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013)

(quoting *Nijhawan v. Holder,* 557 U.S. 29, 41 (2009)).

"Elements are the constituent parts of a crime's legal definition", i.e., what the prosecution

must prove and the jury must find beyond a reasonable doubt to convict the defendant, or what the

defendant must admit when he pleads guilty.  *Mathis v. United States*, 136 S.Ct. 2243, 2248 (2016).

"An element of a crime must be distinguished from the means of satisfying a single element." *Lerma*, 877 F.3d at 631. The test for determining whether a statute alternatively sets out elements or means of satisfying an element is whether a jury must agree on one of the statutory alternatives in reaching a verdict. *Howell*, 838 F.3d at 497.

> Elements must be agreed upon by a jury. When a jury is not required to agree on the way that a particular requirement of an offense is met, the way of satisfying that requirement is a means of committing an offense not an element of the offense.

*Id.* at 498 (quoting *United States v. Hinkle*, 832 F.3d 569, 574-75 (5th Cir. 2016)).

If a statute is indivisible because it sets out a single set of elements, the sentencing court must apply the "categorical approach." *Mathis,* 136 S.Ct. at 2248. It "requires the sentencing court, when determining whether a crime qualifies as a violent felony under the elements [or force] clause, to focus solely on whether the elements of the crime of conviction include the use, attempted use, or threatened use of physical force against the person of another." *Lerma*, 877 F.3d at 630. "The sentencing court is not permitted to review the particular facts of the case." *Id.*

If a statute is divisible because it lists alternative elements, the sentencing court must use the "modified categorical approach" to determine the elements under which the defendant was convicted. *Mathis*, 136 S.Ct. at 2253. Under this approach, the court looks "to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of [committing]." *Id.* at 2249 (citations omitted). "The court can then determine, in deciding whether the crime satisfies the elements [or force] clause, if one of those elements included the use, attempted use, or threatened use of physical force against the person of another." *Lerma*, 877 F.3d at 630.

To determine whether a statute is divisible or indivisible, courts may consider several sources, including the statutory text and state court decisions. *United States v. Reyes-Contreras*, 882

F.3d 113, 119 (5th Cir. 2018).  The Texas Court of Criminal Appeals has held that the text of the current Texas murder statute contains three subsections setting out alternative means of committing the same offense.[3]  *See Ex parte Rogers*, 2017 WL 5476353 at *1 (Tex. Crim. App. Nov. 15, 2017) (murder under § 19.02(b)(1) and § 19.02(b)(2) are alternate means of committing murder); *Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011) (noting murder is a "result of conduct" offense "because it punishes the intentional killing of someone regardless of the specific manner ... of causing the person's death"); *Aguirre v. State*, 732 S.W.2d 320, 325–26 (Tex. Crim. App. 1982) (opinion on rehearing) (holding when indictment contained two paragraphs, the first alleging murder under § 19.02(b)(1) and the second alleging murder under § 19.02(b)(3), the allegations were merely two different manners and means of committing same offense).  A jury is not required to reach unanimous agreement about which subsection of the murder statute a defendant violated, because the three methods of committing murder set forth in the statute are different manners and means of committing the same offense, not distinct and separate offenses.  *Smith v. State*, 436 S.W.3d 353, 378 (Tex. App. – Houston [14th Dist.] 2014).

Because the three subsections of the Texas murder statute set out three alternative means of committing murder by causing the death of an individual, and a jury is not required to agree by which of the three means a defendant committed murder, the statute is indivisible.  *See Lerma*, 877 F.3d at 631; *Howell*, 838 F.3d at 497.  The applicable approach for determining whether the offense of murder qualifies as a violent felony under ACCA's force clause is therefore the "categorical approach."  *See Mathis,* 136 S.Ct. at 2248.  The Court must therefore "focus solely on whether the

---

[3]  The only difference between the current version of the murder statute and the one under which Movant was convicted is that the current version refers to "manslaughter," rather than "voluntary or involuntary manslaughter," in the subsection that describes murder in the course of committing a felony.

elements of the crime of conviction include the use, attempted use, or threatened use of physical force against the person of another." *See Lerma*, 877 F.3d at 630.

## B.    Use of Physical Force

"The phrase 'physical force' [in § 924(e)(2)(B)(i)] means violent force—that is, force capable of causing physical pain or injury to another person." *See Johnson v. United States*, 559 U.S. 133, 140 (2010). As noted, neither the Fifth Circuit nor any district court within it appears to have considered whether Texas murder (which makes it a crime to cause the death of an individual) includes the use of physical force as an element for purposes of determining whether it qualifies a violent felony under ACCA's force clause.[4] The Fifth Circuit has, however, considered whether assault (which makes it a crime to cause bodily injury) includes the use of physical force as an element for purposes of deciding whether it qualifies as a "crime of violence" under the force clause in 18 U.S.C. § 16(a), which is almost identical to the one in ACCA.[5] *See United States v. Villegas–Hernandez*, 468 F.3d 874 (5th Cir. 2006). Its analysis in that case is therefore instructive.[6]

---

[4] Two district courts have held that attempted murder under Texas law is a violent felony under ACCA. *See Joiner v. United States*, No. A-12-CR-0014-SS, A-16-CV-01069-SS, 2018 WL 814021 at *4-5 (W.D. Tex. Feb. 9, 2018) (finding that under either the categorical or modified categorical approaches, attempted murder by shooting a gun is a violent felony for purposes of ACCA); *United States v. Gonzales*, No. 2:11-CR-801 (2:14-CV-388), 2017 WL 978700 at (S.D. Tex. Mar. 13, 2017) (finding that attempted murders by stabbing with a knife, a deadly weapon, and by shooting were violent felonies under ACCA because courts in other jurisdictions had concluded that other states' attempted murder convictions were proper predicate offenses under its force clause). Neither case analyzed the statutory elements of the offense as required under the categorical approach, however. *See Lerma*, 877 F.3d at 630.

[5] Section 16(a) defines a "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person *or property* of another." 18 U.S.C. § 16(a) (2000) (*emphasis added*). ACCA refers only to the use of physical force against the person of another.

[6] Courts analyzing issues arising under the force clause of either § 16(a) or ACCA rely on cases under both statutes, as well as on identically worded sentencing guidelines regarding crimes of violence. *See Johnson v. United States*, 559 U.S. 133, 140 (2010) (relying on case law under § 16 in an analysis of the elements of a crime under the force clause of § 924(e); *United States v. Paniagua*, 481 F. App'x 162, 166 (5th Cir. 2012) (relying on case law under § 924(e) in an analysis of the elements of a crime under the force clause of § 16); *United States v. Johnson*, 880 F.3d 226, 234 (5th Cir. 2018) ("precedent regarding ACCA's definition of a violent felony is directly applicable to the Guidelines definition of a crime of violence").

1.       *Villegas-Hernandez and Progeny*

In *Villegas–Hernandez,* the Fifth Circuit began its analysis of the Texas assault statute under the categorical approach by first explaining that "the term 'force' has a specific meaning and, 'when used in the statutory definition of a 'crime of violence,' is 'synonymous with destructive or violent force.'" *Id.* at 878-79 (quoting *United States v. Landeros–Gonzales*, 262 F.3d 424, 426 (5th Cir. 2001)).  Because use of force must be "an element" of the offense, assault would satisfy the definition of "crime of violence" in § 16(a) "only if a conviction for that offense could not be sustained without proof of the use of 'destructive or violent' force." *Id.* at 879.  The court noted that the "bodily injury" required by the assault statute "could result from any of a number of acts, without use of 'destructive or violent force', [such as] making available to the victim a poisoned drink while reassuring him the drink is safe, or telling the victim he can safely back his car out while knowing an approaching car driven by an independently acting third party will hit the victim." *Id.* Because the prosecution would not need to show use of physical force to convict under these scenarios, the Fifth Circuit concluded that use of force was not a element of the offense, so assault did not qualify as a "crime of violence" under § 16(a). *Id.*  In so finding, the Fifth Circuit recalled its prior *en banc* holdings in *United States v. Vargas-Duran*, 356 F.3d 598, 606 (5th Cir. 2004) (*en banc*), that "'[t]here is ... a difference between a defendant's causation of injury and the ... use of [physical] force,'" and that "'the intentional causation of injury does not necessarily involve the use of force.'" *Id.* at 880-81.

The Fifth Circuit subsequently considered whether a California terroristic threat statute had as an element the threatened use of physical force and was therefore a "crime of violence" for purposes of § 2L1.2 of the Sentencing Guidelines, which is in relevant part identical to ACCA's force clause.  *See United States v. De La Rosa–Hernandez*, 264 F. App'x 446, 447-49 (5th Cir.

2008). Citing *Villegas–Hernandez,* it began its analysis by reiterating that its "rule is clear: if the defendant may be found guilty of an offense under a set of a facts not involving the actual, attempted use of physical force against another, the offense is *not* a [crime of violence]." *Id.* at 448-49 (*emphasis original*). Applying the categorical approach, the court found that "[a]s in *Villegas,* a defendant could violate [the California statute, which criminalized threatening to commit a crime that would result in death or great bodily injury to another person], by threatening either to poison another or to guide someone intentionally into dangerous traffic, neither of which involve 'force', as that term is defined by our court." *Id.* at 449. Because it was possible to obtain a conviction under the statute without proof of the threatened use of physical force, the Fifth Circuit found that it was not an element of the offense, so it was not a crime of violence. *Id.*

More recently, in *United States v. Rico-Mejia*, 859 F.3d 318, 321 (5th Cir. 2017), the Fifth Circuit again considered whether a "terroristic threatening" statute had the threatened use of physical force as an element and was a crime of violence under § 2L1.2. The court found that even if the district court correctly resorted to the modified categorical approach in analyzing the Arkansas "terroristic threatening" statute, which made it an offense to threaten to cause death or serious bodily injury to another person, the offense could not constitute a crime of violence under *Villegas–Hernandez* and *De La Rosa–Hernandez* because a person could cause physical injury without using physical force. *Id.* at 322-23.

### 2.    *Castleman*

The Government argues that the Supreme Court's decision in *United States v. Castleman*, 134 S.Ct. 1405 (2014), undermined *Villegas-Hernandez* and the other Fifth Circuit cases that held that a statutory element of causing injury or threatening to cause the death of a person does not necessarily include the use or threatened use of physical force. (*See* doc. 19 at 5-9.) This argument

has recently been expressly rejected by the Fifth Circuit, however:

> The Government responds that [*Villegas-Hernandez* and its progeny] have been overruled by *United States v. Castleman*, ___ U.S. ___, 134 S.Ct. 1405, 1414, 188 L.Ed.2d 426 (2014), which held that a defendant's guilty plea to having "intentionally or knowingly cause[d] bodily injury" to the mother of his child constituted "the use of physical force" required for a misdemeanor crime of domestic violence as defined in 18 U.S.C. § 921(a)(33)(A). The Government points out that as part of the Supreme Court's reasoning in that decision, it applied a definition of "use of physical force" that was much broader than that described in the above cases – one that could involve harm caused both directly and indirectly and that would include administering poison or similar actions. *Id.* at 1413–15. ...

> The Government's contention regarding *Castleman* must be rejected. By its express terms, *Castleman*'s analysis is not applicable to the physical force requirement for a crime of violence, which "suggests a category of violent, active crimes" that have as an element a heightened form of physical force that is narrower in scope than that applicable in the domestic violence context. 134 S.Ct. at 1411 n.4 (noting that "Courts of Appeals have generally held that mere offensive touching cannot constitute the 'physical force' necessary to a 'crime of violence' " and clarifying that "[n]othing in today's opinion casts doubt on these holdings, because ... 'domestic violence' encompasses a range of force broader than that which constitutes 'violence' simpliciter"). Accordingly, *Castleman* does not disturb this court's precedent regarding the characterization of crimes of violence, and [the Arkansas terroristic threat statute] cannot constitute a crime of violence ... because it lacks physical force as an element.

*Rico-Mejia*, 859 F.3d at 322-23.

Subsequently, in *Reyes-Contreras*, the Fifth Circuit noted the Government's argument that "indirect force is sufficient, [and that *Castleman* had] overruled Fifth Circuit precedent requiring destructive or violent force by interpreting the use-of-force clause in 18 U.S.C. § 921(a)(33)(A)(ii) to encompass the common-law definition, which includes offensive touching and indirect applications of force." 882 F.3d at 123. It also noted, however, its prior holdings in *Rico-Mejia* as well as *United States v. Calderon-Pena*, 383 F.3d 254, 260 (5th Cir. 2004), "in which the *en banc* court expressly held that an offense that can be committed without 'any bodily contact (let alone violent or forceful contact)'" does not have physical force as an element." *Id*. As the Fifth Circuit

acknowledged,

> [t]he government rightly points out that many circuits have rejected this view and have expanded *Castleman* to state that indirect causation of bodily injury may warrant a [crime of violence] enhancement. But *Castleman* does not on its own terms make this expansion, and a previous panel [in *Rico-Mejia*] declined to interpret it as doing so, thus binding us.

*Id.* This court is likewise bound by *Rico-Mejia*'s rejection of the Government's reliance on *Castleman*.[6]

### 3.    Howell

The Government also argues that in *United States v. Howell*, 838 F.3d 489 (5th Cir. 2016), the Fifth Circuit held that causation of bodily injury requires the use of force, so causation of death also requires the use of force, since death is a higher level of bodily injury. (*See* doc. 19 at 7-8.) The Texas statute at issue in *Howell* was assault by causing bodily injury to a family member by "impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth." *Id.* at 490-91. Holding that the offense was a crime of violence under the force clause, the court explained:

> It is difficult to conceive of how applying pressure to either a person's throat or neck in a manner that resulted in "impeding the normal breathing or circulation" could not involve the use of physical force. The same is true of blocking a person's nose or mouth resulting in "impeding the normal breathing or circulation of the blood of the person." ... The operative language in the statute is "by applying pressure to the person's throat" or "by blocking the person's nose or mouth," indicating affirmative action on the part of the defendant that is more direct [than the hypotheticals argued by Howell].

*Id.* at 502.

In addition to the element of causing bodily injury, the assault statute in *Howell* had as an element the use of physical force by either impeding breathing or circulation of the blood by

---

[6]    The Government filed a motion for rehearing *en banc* in *Reyes-Contreras* on April 5, 2018.

applying pressure to the throat or by blocking the nose or mouth.[7]  By contrast, the statutes at issue in *Villegas-Hernandez* and *De La Rosa-Hernandez* only had as an element the causing of bodily injury or the threat to cause death; they did not have any additional element regarding the use or threatened use of physical force.  *Howell* is therefore distinguishable.

In conclusion, the Court finds that the Fifth Circuit's rationale in *Villegas-Hernandez* for finding that a person can cause bodily injury without the use of physical force, which was reaffirmed in *De La Rosa–Hernandez* and *Rico-Mejia*, applies equally to the determination of whether a person may cause the death of another under the Texas murder statute without the use of physical force. In those cases, the court repeatedly noted that there are any number of actions, including poisoning and deception, that do not require the use of destructive or violent force in order to cause bodily injury, or to threaten to commit a crime that would result in death or great bodily injury to another person. These same types of actions could also cause the death of a person.  Because there is a set of facts that would support a conviction for Texas murder without proof of the use of force, and the use of force is not a fact necessary to support a conviction under that statute, the use of force is not an element of Texas murder.  Applying the Fifth Circuit's clear rule in *Villegas–Hernandez* to the Texas murder statute, the Court finds that the offense is not a violent felony under ACCA's force

---

[7]  The Fifth Circuit later relied on *Howell* in considering whether a Minnesota unintentional murder statute was a crime of violence for purposes of § 2L1.2.  *See United States v. Herrera-Serrano*, 703 F. App'x 342 (5th Cir. 2017).  Under the statute, a person commits an offense if he "causes the death of a human being, without intent to effect the death of any person, while committing a felony offense ... with force or violence or a drive-by shooting."  *Id*. at 344.  The court noted that Minnesota required the jury to be instructed as to the elements of the underlying felony, and that an element of the underlying felony in that case, assault, was the infliction of "great bodily harm."  *Id*. at 344-45.  Applying the modified categorical approach, the Fifth Circuit held that the Minnesota offense was a crime of violence because it had as an element the use of physical force.  *Id*.  It specifically noted its holding in *Howell* "that intentional, knowing, or reckless causing of bodily injury to another (the Texas offense of domestic abuse by impeding breathing or circulation) has as an element the use of force."  *Id*.  As in *Howell*, the statute in *Herrera-Serrano* had as an element the use of physical force in addition to the element of injury causation.

clause.[8]

Movant's sentence was enhanced under ACCA, in part, based on the murder offense. Because murder is no longer a violent felony after *Johnson*, the enhancement under the ACCA and increase in Movant's offense level as a career armed criminal does not survive.

## V.  RECOMMENDATION

The motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 should be **GRANTED**, the sentence should be vacated, and Movant should be re-sentenced.

**SO RECOMMENDED** this 7th day of May, 2018.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[8]    Even if the modified categorical approach was used, the result would be the same.  As discussed, under this approach, courts look to documents such the indictment, jury instructions, or plea agreement, to determine the offense and elements of conviction. *Mathis*, 136 S.Ct. at 2249.  Once the statutory elements are determined by resorting to court documents, it is those elements, rather than the underlying conduct, that are used to determine whether the offense is a violent felony under the elements clause. *See United States v. Godoy-Castaneda*, 614 F. App'x 768, 770 (5th Cir. 2015). Here, the indictment alleged that Movant caused the death of an individual by "striking the deceased with bottles and boards." (*See*, 3:15-CV-3912-B, doc. 20 at 3.) The Texas Court of Criminal Appeals has explained that the allegation of the "manner and means [of causing death] is a description of how the offense was committed," and it includes the defendant's actions and the instrument of death.  *Sanchez v. State*, 376 S.W.3d 767, 773 (Tex. Crim. App. 2012).  The jury does not need to unanimously agree on the manner and means of causing death, only that the defendant caused the death.  *See id*. at 773-74 (jury not required to unanimously agree on whether the defendant cause the death by one of several possible ways of asphyxiating the deceased).  Because jury unanimity is not required for the manner and means of causing the death of an individual, the manner and means in Movant's case, i.e., "striking the deceased with bottles and boards," are not elements of the offense. *See Howell*, 838 F.3d at 497.  The relevant element of murder under the modified categorical approach is causing the death of an individual.  As discussed, the element of causing the death of an individual does not make murder a violent felony under the force clause.

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

15