IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MICHAEL DEWAYNE VICKERS,
        Petitioner,

v.

UNITED STATES OF AMERICA,
        Respondent.

No.    3:15-CV-3912-B-BH
       (3:16-CR-0229-B)

## GOVERNMENT'S SUPPLEMENTAL RESPONSE TO VICKERS'S SUCCESSIVE MOTION UNDER 28 U.S.C. § 2255

Respectfully submitted,

Leigha Simonton
United States Attorney

*/s/ Amy J. Mitchell*
Amy J. Mitchell
Assistant United States Attorney
Texas Bar No. 24029734
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8771
amy.mitchell@usdoj.gov

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................iii

GOVERNMENT'S SUPPLEMENTAL RESPONSE TO VICKERS'S
SUCCESSIVE MOTION UNDER 28 U.S.C. § 2255 ....................................................... 1

    1.    BACKGROUND ......................................................................................... 2

            Statement of the Case ...................................................................... 2

    2.    DISCUSSION ............................................................................................ 3

          A.    Vickers cannot demonstrate that it was more likely than not that this
Court relied on the residual clause when it found that his murder
conviction was an ACCA predicate, and his motion must be
dismissed for lack of jurisdiction. ....................................................... 3

          B.    Even if the Court addresses the merits of Vickers's claim, the Texas
murder statute is divisible, and Vickers's conviction for intentional
and knowing murder qualifies as a violent felony under the force
clause. ................................................................................................. 9

          C.    Alternatively, all subdivisions of the Texas murder statute continue
to qualify as violent felonies after *Borden*. ..................................... 15

    3.    CONCLUSION ........................................................................................ 20

CERTIFICATE OF SERVICE ........................................................................... 21

## TABLE OF AUTHORITIES

**Federal Cases**                                                                    **Page(s)**

*Borden v. United States*, 141 S. Ct. 1817 (2021) ..................................................... 1, 15, 16

*Descamps v. United States*, 570 U.S. 254 (2013)......................................................... 9, 14

*In re Irby*, 858 F.3d 231 (4th Cir. 2017).............................................................................. 8

*Johnson v. United States*, 135 S. Ct. 2551 (2015)............................................................. 2

*Joiner v. United States*, No. A-16-CV-1069-SS, 2018 WL 814021
    (W.D. Tex. Feb. 9, 2018)................................................................................................. 7

*Mathis v. United States*, 579 U.S. 500 (2016).................................................. 7, 10, 12, 15

*Plunkett v. Estelle*, 709 F.2d 1004 (5th Cir. 1983)..................................................... 10, 11

*Richardson v. United States*, No. 3:16-CV-1779-K, 2019 WL 3338263
    (N.D. Tex. July 15, 2019)................................................................................................ 8

*Sanders v. United States*, No. 4:16-CV-502-P, 2022 WL 17181894
    (N.D. Tex. Nov. 23, 2022)............................................................................................... 8

*Shepard v. United States*, 544 U.S. 13 (2005)..................................................................... 5

*Taylor v. United States*, 495 U.S. 575 (1990) ..................................................................... 9

*United States v. Alexander*, 808 F. App'x 234 (5th Cir. 2020) ........................................ 6

*United States v. Alvarado-Linares*, 44 F.4th 1334 (11th Cir. 2022) .......................... 16, 19

*United States v. Begay*, 33 F.4th 1081 (9th Cir. 2022)................................................ 16, 19

*United States v. Clay*, 921 F.3d 550 (5th Cir. 2019) ..................................................... 1, 4

*United States v. Garcia-Perez*, 779 F.3d 278 (5th Cir. 2015)............................................ 7

*United States v. Garrett*, 24 F.4th 485 (5th Cir. 2022)..................................................... 13

*United States v. Gonzalez*, No. 2:14-CV-388, 2017 WL 978700
    (S.D. Tex. Mar. 13, 2017) ............................................................................................... 7

*United States v. Harrison*, 54 F.4th 884 (6th Cir. 2022) ...................................... 16, 18, 19

*United States v. Hernandez*, 779 F. App'x 195 (5th Cir. 2019) .................................. 4, 5, 7

**Federal Cases, continued**                                                    **Page(s)**

*United States v. Lawrence Taylor*, 873 F.3d 476 (5th Cir. 2017) ....................................... 4

*United States v. Lerma*, 877 F.3d 628 (5th Cir. 2017) ...................................................... 13

*United States v. Lindsey*, No. 20-10072, 2022 WL 458385 (5th Cir. Feb. 15, 2022) ........ 4

*United States v. Manley*, 52 F.4th 143 (4th Cir. 2022) ................................................ 16, 19

*United States v. Medina*, 800 F. App'x 223 (5th Cir. 2020) .......................................... 4, 6

*United States v. Quinonez-Saa*, 741 F. App'x 973 (5th Cir. 2018) .................................. 17

*United States v. Reyes-Contreras*, 910 F.3d 169 (5th Cir. 2018) ...................................... 6

*United States v. Vargas-Duran*, 356 F.3d 598 (5th Cir. 2004) .......................................... 6

*United States v. Vickers*, 540 F.3d 356 (5th Cir. 2008) ...................................................... 2

*United States v. Vickers*, 967 F.3d 480 (5th Cir. 2020) ...................................................... 3

*United States v. Vickers*, No. 18-10940, 2022 WL 780421 (5th Cir. 2022) .............. 1, 2, 3

*United States v. Villegas-Hernandez*, 468 F.3d 874 (5th Cir. 2006) .................................. 6

*United States v. Wiese*, 869 F.3d 720 (5th Cir. 2018) ....................................... 1, 3, 4, 5, 8

*Vickers v. Maye*, 546 F. App'x 395 (5th Cir. 2013) ............................................................ 2

*Vickers v. Maye*, No. A-11-CV-958-LY, 2012 WL 2462009 (W.D. Tex. June 26, 2012) . 2

*Vickers v. United States*, 141 S. Ct. 2783 (2021) ................................................................ 3

*Vickers v. United States*, 143 S. Ct. 234 (2022) ................................................................. 3

*Voisine v. United States*, 136 S. Ct. 2272 (2016) ............................................................. 16


**Federal Statutes and Rules**

28 U.S.C. § 2244(b) ......................................................................................................... 3, 4

28 U.S.C. § 2255(h) ......................................................................................................... 3, 4

**State Cases**                                                                     **Pages(s)**

*Aguirre v. State*, 732 S.W.2d 320 (Tex. Crim. App. 1982)................................................ 12

*Alford v. State*, 866 S.W.2d 619 (Tex. Crim. App. 1993) ................................................ 17

*Chavez v. United States*, No. 5:16-CV-173, 2021 WL 765764 (S.D. Tex. Feb. 25, 2021) 8

*Creel v. State*, 754 S.W.2d 205 (Tex. Crim. App. 1988) .................................................. 12

*Lawson v. State*, 64 S.W.3d 396 (Tex. Crim. App. 2001)................................................. 18

*Lugo-Lugo v. State*, 650 S.W.2d 72 (Tex. Crim. App. 1983) ............................... 11, 12, 17

*Rodriguez v. State*, 953 S.W.2d 342- (Tex. App.-Austin 1997)....................................... 18

*State v. Florio*, 845 S.W.2d 849 (Tex. Crim. App. 1992) ................................................ 11

*Strickland v. State*, 193 S.W.3d 662 (Tex. App.-Fort Worth 2006)................................. 18

*Walter v. State*, 581 S.W.3d 957 (Tex. App.-Eastland 2019) .......................................... 13

*Watson-Scott v. Commonwealth*, 298 Va. 251, 835 S.E.2d 902 (2019)........................... 19

**State Statutes and Rules**

Ky. Rev. Stat. §507.020................................................................................................. 18

O.C.G.A. § 16-5-1(b)..................................................................................................... 19

Tex. Penal Code § 19.02(b) ........................................................................................... 11

Tex. Penal Code § 19.02(b)(3) ...................................................................................... 17

Texas Penal Code § 6.01(a) ........................................................................................... 17

<u>GOVERNMENT'S SUPPLEMENTAL RESPONSE TO</u>
<u>VICKERS'S SUCCESSIVE MOTION UNDER 28 U.S.C. § 2255</u>

On March 14, 2022, the Fifth Circuit remanded Vickers's successive 28 U.S.C.

§ 2255 motion, instructing this Court to consider the following:

(1)     Whether there is jurisdiction to consider Vickers's successive motion in light of *United States v. Wiese*, 869 F.3d 720 (5th Cir. 2018), and *United States v. Clay*, 921 F.3d 550 (5th Cir. 2019).

(2)     What impact does the Supreme Court's decision in *Borden v. United States*, 141 S. Ct. 1817 (2021), have on the substantive matters at issue.

 *See United States v. Vickers*, No. 18-10940, 2022 WL 780421 (5th Cir. 2022), *cert.*

*denied* 143 S. Ct. 234 (2022).

This Court should reject Vickers's motion.  First, Vickers cannot show it is more

likely than not that this Court relied on the now-invalidated residual clause of the Armed

Career Criminal Act (ACCA) at sentencing, and as a result, the Court lacks jurisdiction

over this matter and should dismiss it.  Second and alternatively, Vickers's Texas murder

conviction continues to be a valid ACCA predicate because: (1) the Texas murder statute

is divisible, and Vickers's conviction for intentional and knowing murder qualifies as a

violent felony under the force clause, and/or (2) the entirety of the Texas murder statute

qualifies as an ACCA predicate even after *Borden* because Texas felony murder requires

the commission of an act clearly dangerous to human life that causes a death, which

encompasses a mens rea of extreme recklessness and the use of violent force *against*

*another person*.

1

## 1.    BACKGROUND

### Statement of the Case

After a jury trial, Vickers was found guilty of being a felon in possession of a firearm, met the criteria of ACCA, and was sentenced to 190 months' imprisonment with credit for the time served on his related state case (22 months).  (CR No. 52.)[1]  His judgment was affirmed on direct appeal.  *United States v. Vickers*, 540 F.3d 356 (5th Cir. 2008), *cert. denied*, 555 U.S. 1088 (2008).  Vickers timely filed his first Section 2255 motion on September 23, 2009.  *See Vickers v. United States*, No. 3:09-CV-1777-B (N.D. Tex.))  The Court denied Vickers's first Section 2255 motion on January 12, 2011, and no appeal was taken from that ruling.  (09-CV No. 8.)

On November 8, 2011, Vickers filed an Application for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, relying on the savings clause of 28 U.S.C. § 2255, arguing that his burglary of a habitation conviction was not a crime of violence; his petition was denied.  *Vickers v. Maye*, No. A-11-CV-958-LY, 2012 WL 2462009 (W.D. Tex. June 26, 2012).  Vickers appealed that denial, and the Fifth Circuit affirmed the district court's decision and denied authorization to file a successive Section 2255 motion.  *Vickers v. Maye*, 546 F. App'x 395 (5th Cir. 2013).

Vickers filed the instant Section 2255 motion on December 8, 2015, alleging that the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015),

---

[1] Citations to "CR No. _" refer to the docket of the underlying criminal proceeding, *United States v. Vickers*, Case No. 3:06-CR-229-B.  Documents filed in Vickers's first Section 2255 motion will be referred to as "09-CV No."  Documents filed in this Section 2255 action are cited as "15-CV No. _."  Other documents, such as the presentence report (PSR), will be referenced by title.

allowed him to file a renewed Section 2255 motion.  (15-CV No. 2 at 1.)  After the Court

appointed counsel, Vickers requested and received authorization from the Fifth Circuit to

file a successive Section 2255 motion addressing the issue of whether his prior Texas

murder conviction continues to be a proper predicate offense for his ACCA sentence in

light of *Johnson*.  In 2018, this Court granted Vickers relief and resentenced him to 98

months' imprisonment.  (CR No. 88.)  The government appealed the Court's Section

2255 determination and the resulting non-ACCA sentence.  (CR No. 90.)

The Fifth Circuit initially reversed this Court's determination.  *United States v.*

*Vickers*, 967 F.3d 480 (5th Cir. 2020).  Vickers sought certiorari, which was granted, and

the case was returned to the Fifth Circuit for further consideration in light of *Borden*.

*Vickers v. United States*, 141 S. Ct. 2783 (2021).  Following supplemental briefing and

oral argument, the Fifth Circuit remanded the case to this Court for consideration of the

jurisdictional requirements for successive motions and the effect of *Borden*.  *Vickers*,

2022 WL 780421 at *1.  Vickers again sought certiorari, which was denied.  *Vickers v.*

*United States*, 143 S. Ct. 234 (2022).

**2.      DISCUSSION**

**A.      Vickers cannot demonstrate that it was more likely than not that this
         Court relied on the residual clause when it found that his murder
         conviction was an ACCA predicate, and his motion must be dismissed
         for lack of jurisdiction.**

A prisoner filing "[a] second or successive habeas application must meet strict

procedural requirements before a district court can properly reach the merits of the

application."  *Wiese*, 869 F.3d at 723 (citing 28 U.S.C. §§ 2244(b) & 2255(h)).  "There

3

are two requirements, or 'gates,' which a prisoner making a second or successive habeas motion must pass to have it heard on the merits." *Id.* The prisoner first must seek and receive the circuit court's permission to file a second or successive motion by "mak[ing] a 'prima facie showing' that the motion relies on a new claim resulting from either (1) 'a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable,' or (2) newly discovered, clear and convincing evidence that but for the error no reasonable fact finder would have found the defendant guilty." *Id.* (quoting 28 U.S.C. §§ 2244(b) & 2255(h)). If, as here, the Fifth Circuit grants that permission, "the prisoner must [next] actually prove at the district court level that the relief he seeks relies either on a new, retroactive rule of constitutional law or on new evidence." *Id.* (citations omitted).

To prove that his successive motion relies on the constitutional rule established in *Johnson*, as Vickers claims, he must show that, when he was sentenced in 2007, it was "more likely than not" that this Court relied on the now-defunct residual clause of the ACCA in concluding that his prior Texas murder conviction qualified as a violent felony. *See United States v. Clay*, 921 F.3d 550, 559 (5th Cir. 2019).[2] In deciding whether that showing has been made, this Court should "look to the law at the time of sentencing," and may consider: "(1) the sentencing record for direct evidence…[;] and (2) the relevant background legal environment that existed at the time of the defendant's sentencing and

---

[2] Several panels of the Fifth Circuit have rejected any argument that *Wiese* (and now *Clay*) are contradictory to *United States v. Lawrence Taylor*, 873 F.3d 476, 479-81 (5th Cir. 2017). (CV No. 15 at 13-14.) *See United States v. Lindsey*, No. 20-10072, 2022 WL 458385 at *2 (5th Cir. Feb. 15, 2022); *United States v. Medina*, 800 F. App'x 223, 226 (5th Cir. 2020); *United States v. Hernandez*, 779 F. App'x 195, 199 n.3 (5th Cir. 2019).

the [PSR] and other relevant materials before the district court."  *Wiese*, 869 F.3d at 725 (internal quotation marks, brackets, and citations omitted).  Vickers cannot satisfy his burden for two reasons.

<u>*First*</u>, unlike in some cases applying *Wiese* and *Clay*, the record below is silent as to whether the court relied on ACCA's elements clause or residual clause.  Neither the PSR nor any materials referenced the residual clause, and the sentencing transcript is also silent.  That is because, in 2007, Vickers did not dispute that his murder conviction was an ACCA predicate; instead, he objected only to counting his "Delivery of a Controlled Substance" conviction as an ACCA predicate.  (CR No. 61 at 16-17.)  Thus, at sentencing, the Court's only comments about Vickers's murder conviction concerned admitting documents under *Shepard v. United States*, 544 U.S. 13 (2005).  (CR No. 60 at 10-14.)

Because nothing in the record itself suggests that the Court relied on the residual clause in counting Vickers's prior murder conviction as an ACCA predicate, it is—at best—speculation on Vickers's part that the court relied on the residual clause.  This uncertainty is fatal to his claim for relief because, for the Court to grant relief, Vickers must show more than a theoretical possibility that the sentencing court relied on the residual clause at sentencing.  *See United States v. Hernandez*, 779 F. App'x 195, 199-200 (5th Cir. 2019) (holding that the "more likely than not" standard was not met where the defendant only showed "that the sentencing court might have relied on the residual clause").  Indeed, in *Clay*, the Fifth Circuit held that the "more likely than not" standard was **not** satisfied where a prisoner "failed to put forward any evidence suggesting explicit

reliance on the residual clause." *United States v. Medina*, 800 F. App'x 223, 226 (5th Cir. 2020) (citing *Clay*), *cert. denied*, 141 S. Ct. 1048 (2021); *see also United States v. Alexander*, 808 F. App'x 234, 238 (5th Cir. 2020) (determining that the defendant had not carried his burden where, "[a]t the sentencing hearing, the judge did not say anything to suggest he relied on ACCA's residual clause"—let alone, "explain whether he was applying the categorical or modified categorical approach"), *cert. denied*, 141 S. Ct. 1083 (2021).

*Second*, the legal environment at the time of sentencing cannot establish that this Court relied on the residual clause because intentional murder was a valid force-clause predicate at that time. Indeed, it would have been unimaginable in 2007 to argue that murder, especially intentional murder, was not a violent felony. Contrary to Vickers's arguments on appeal and anticipated argument here, Fifth Circuit precedent did not foreclose any suggestion that Texas murder might satisfy ACCA's elements clause in 2007. (*United States v. Vickers*, No. 18-10940, Ltr. filed 9/17/2021 at 4 (citing *United States v. Vargas-Duran*, 356 F.3d 598, 606 (5th Cir. 2004) (en banc), and *United States v. Villegas-Hernandez*, 468 F.3d 874, 879 (5th Cir. 2006).)[3] While *Vargas-Duran* noted that there was "a difference between a defendant's causation of an injury and the defendant's use of force," 356 F.3d at 606, these cases did not construe the Texas murder statute, did not conclude that a Texas murder conviction fell outside of ACCA's elements clause, and—most importantly—did not prevent a court, in 2007, from relying on the

---

[3] *Vargas-Duran* and *Villegas-Hernandez* are no longer good law. *See United States v. Reyes-Contreras*, 910 F.3d 169 (5th Cir. 2018) (en banc).

elements clause to conclude that a Texas murder conviction was a violent felony.  In fact, the Fifth Circuit noted that applying *Vargas-Duran* to offenses involving death would be an "exten[sion]" of that case *eight years* after Vickers was sentenced.  *United States v. Garcia-Perez*, 779 F.3d 278, 284 (5th Cir. 2015), *overruled by Reyes-Contreras*, 910 F.3d at 169.  Further, mere "rumblings" in case law are insufficient to show reliance on the residual clause.  *Rodriguez*, 779 F. App'x at 199.  Thus, there is every reason to think that the Court here relied on the elements clause and no reason to think it resorted to the residual clause.  It follows, then, Vickers fails to carry his burden under *Wiese*, so his motion must be dismissed.

In 2007 and prior to *Mathis v. United States*, 579 U.S. 500 (2016), statutes like the Texas murder statute routinely were narrowed through the use of *Shepard* documents.  And from the *Shepard* documents here, we know that Vickers was convicted under Tex. Penal Code § 19.02(a)(1)[4] for "knowingly and intentionally" killing a man.  (15-CV No. 3-15.)  Even so, the government expects Vickers to argue that Texas intentional murder could not be a violent felony under the elements clause until the Fifth Circuit, in *Reyes-Contreras*, broadened its view of the elements clause and abrogated the distinction between direct and indirect force.  But Vickers is wrong because other courts have held that prior murder (or attempted murder) convictions were violent felonies under the elements clause before *Reyes-Contreras*.  *See United States v. Gonzalez*, No. 2:14-CV-388, 2017 WL 978700, at *3-5 (S.D. Tex. Mar. 13, 2017); *Joiner v. United States*, No. A-

---

[4] Vickers's offense now exists in Section 19.02(b)(1) but has identical statutory language.

16-CV-1069-SS, 2018 WL 814021, at *4-5 (W.D. Tex. Feb. 9, 2018), *vacated*, 142 S. Ct. 57 (2021).[5]  Given these decisions, other courts, including one in this district, also have found that defendants could not show—in 2011-2012, when relevant Fifth Circuit law was effectively the same as in 2007—that their sentences relied on the residual clause in holding that Texas murder (or attempted murder) convictions were violent felonies/crimes of violence.  *See Chavez v. United States*, No. 5:16-CV-173, 2021 WL 765764, at *4-5 (S.D. Tex. Feb. 25, 2021); *Richardson v. United States*, No. 3:16-CV-1779-K, 2019 WL 3338263, at *5-6 (N.D. Tex. July 15, 2019).  The Court should reach the same conclusion here.

In sum, because: (1) the sentencing record here is silent as to whether the Court relied on the residual clause or the elements clause in determining that Vickers's prior Texas murder conviction was a violent felony; and (2) Fifth Circuit law did not prevent a district court, in 2007, from concluding that a Texas murder conviction—in particular, intentional murder—was a violent felony under the elements clause, Vickers cannot meet his burden of showing that it was "more likely than not" that the Court relied on the residual clause to conclude that his prior Texas murder conviction was a violent felony. Because Vickers cannot meet his burden to demonstrate "that the relief he seeks relies . . . on a new, retroactive rule of constitutional law," *Wiese*, 869 F.3d at 723, the Court should dismiss his successive Section 2255 motion.  *See also Sanders v. United States*, No. 4:16-CV-502-P, 2022 WL 17181894 (N.D. Tex. Nov. 23, 2022) (dismissing movant's

---

[5] Other circuits recognized that "[c]ommon sense dictate[d] that murder" qualified as a violent felony under the elements clause.  *In re Irby*, 858 F.3d 231, 237 (4th Cir. 2017).

successive Section 2255 motion because he failed to prove it was more likely than not that the sentencing court relied on the residual clause when it found that Sanders's two Texas murder convictions were violent felonies).

**B.**  **Even if the Court addresses the merits of Vickers's claim, the Texas murder statute is divisible, and Vickers's conviction for intentional and knowing murder qualifies as a violent felony under the force clause.**

The Texas murder statute is divisible.  Applying the modified categorical approach here, Vickers's murder conviction, which was premised on intentional murder, clearly had force as an element and was properly an ACCA predicate offense.  In determining whether a particular offense—here, Texas murder—qualifies as a violent felony for ACCA purposes, the Court ordinarily applies the categorical approach.  *Taylor v. United States*, 495 U.S. 575, 600 (1990).  That approach requires courts to look at the elements of a defendant's prior offense, not to the underlying facts.  *Id*.  But where a statute is divisible, courts may apply a modified categorical approach:

> [T]he modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute.  The modified approach thus acts not as an exception, but instead as a tool.  It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime.  And it preserves the categorical approach's basic method: comparing those elements with the generic offense's.  All the modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative elements, and so effectively creates several different . . . crimes.

*Descamps v. United States*, 570 U.S. 254, 263-64 (2013).

A statute is divisible when it "comprises multiple, alternative versions of the crime."  *Id*. at 262.  Those alternative versions must not just be different factual ways to

commit the offense; they must be separate elements. *Mathis*, 579 U.S. at 504. "Elements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction." *Id*. (internal quotation marks omitted). At a trial or during a plea hearing, they are things the jury must find or the defendant must admit. *Id*. Mere facts, on the other hand, are "circumstances or events having no legal effect or consequence." *Id*. (internal quotation marks omitted). When a court is faced with a statute with alternative elements, then the court may look to a "limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id*. at 505.

The *Mathis* framework instructs courts to consult "authoritative sources of state law," including the language of the statute itself, pertinent state court decisions, and—if state law fails to provide clear answers—record documents from the defendant's own prior conviction. *Id*. at 518. Here, the language of the statute and state court decisions demonstrate that the Texas murder statute describes three different forms of conduct, and thus, three distinct offenses, in its statutory subsections. In fact, the Fifth Circuit, in another context, recognized that the various subdivisions of Texas murder describe separate offenses. "Under Texas law, [Section] 19.02(a)(1) and [Section] 19.02(a)(2)[6] are distinct and separate crimes." *Plunkett v. Estelle*, 709 F.2d 1004, 010 (5th Cir. 1983). The court so reasoned because the two subdivisions had different elements—(a)(1)

---

[6] Now Sections 19.02(b)(1) and (b)(2).

required intent to kill, while (a)(2) dispensed "with the requirement that the actor intend the resulting death." *Id*. (quoting *Lugo-Lugo v. State*, 650 S.W.2d 72, 88 (Tex. Crim. App. 1983) (opinion on rehearing en banc) (Clinton, J., concurring)).

Under Texas law, a person commits murder if he:

(1)     intentionally or knowingly causes the death of an individual;

(2)     intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or

(3)     commits or attempts to commit a felony, other than manslaughter, and in the course and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

Tex. Penal Code § 19.02(b).[7]

State court decisions and pattern jury charges delineate the elements of each subsection.  Texas Penal Code 19.02(b)(1), which describes intentional or knowing killing of another, has the following elements:

1.     The defendant caused the death of an individual; and
2.     The defendant did this intentionally or knowingly.

Texas Criminal Pattern Jury Charges § 80.2 (2016); *see also State v. Florio*, 845 S.W.2d 849, 853 n.4 (Tex. Crim. App. 1992).

Subsection (b)(2), which involves a killing by intentional serious bodily injury, has the following elements:

1.     The defendant committed an act clearly dangerous to human life; and
2.     This act caused the death of an individual; and

---

[7] The statutory language is identical to the version under which Vickers was convicted.  The subsections have simply been renumbered.

11

3.     The defendant had the intent to cause serious bodily injury.

Texas Criminal Pattern Jury Charges § 80.3 (2016); *see also Lugo-Lugo*, 650 S.W.2d at

81.

Finally, subsection (b)(3)—felony murder—has the following elements:

1.     The defendant committed or attempted to commit a felony, other than manslaughter; and
2.     In the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt of that felony, the defendant committed or attempted to commit an act clearly dangerous to human life; and
3.     The act clearly dangerous to human life caused the death of an individual.

Texas Criminal Pattern Jury Charges § 80.4 (2016); *see also Creel v. State*, 754 S.W.2d

205, 211 (Tex. Crim. App. 1988).  It is obvious from the face of the statute and in the

judicially explained elements that the Texas murder statute proscribes different forms of

conduct, each having distinct elements.[8]  The proof required for each subsection is vastly

different.  The only commonality is the resulting death, explaining the common heading

of "murder."

     Vickers will likely argue that the statute is not divisible because the Texas Court

of Criminal Appeals has found that, when a defendant is charged under two subsections

of the Texas murder statute, the jury need not unanimously agree which subdivision was

violated.  *Aguirre v. State*, 732 S.W.2d 320, 325-26 (Tex. Crim. App. 1982).  However,

the Fifth Circuit has looked beyond the Texas courts' juror-unanimity findings in

---

[8] Within those subdivisions, however, there are alternative "means."  For instance, a person could be charged with felony murder under an indictment that contains two different felony predicates—thereby "enumerat[ing] various factual means of committing a single element."  *Mathis*, 579 U.S. at 506.

evaluating a statute's divisibility where there is clear tension between the statutory language and the state court decisions, and for the same reasons, it should do so here. Specifically, in *United States v. Lerma*, 877 F.3d 628, 634 & n.4 (5th Cir. 2017), the Fifth Circuit found that the Texas aggravated robbery statute was divisible despite similar jury-unanimity language in state court cases.  The *Lerma* Court observed that the Texas courts used the term "means" in a different way than the *Mathis* court.  The state court "used the word 'means' to describe the various crimes set forth in the aggravated robbery statute," not "in relation to satisfying a single element of a crime, as *Mathis* requires."  *Id*. at 634 n.4.  The same is true here.

Tellingly, despite similarly stating that the "three methods of committing murder are not separate offenses," a Texas intermediate court of appeals recently recognized that "[w]hile the three ways to commit murder share a common gravamen, they proscribe different forms of conduct."  *Walter v. State*, 581 S.W.3d 957, 968-69 (Tex. App.—Eastland 2019, pet. ref'd) (emphasis added).  That court further explained that each statutory subdivision of Texas murder "has a different mens rea component" and detailed the various elements of felony murder and serious-bodily-injury murder.  *Id*. at 969-71. This bolsters the conclusion that the Texas courts' statements about all subdivisions of Texas murder being "the same offense" are not premised on the type of analysis or the same considerations required by *Mathis*.

Moreover, in a recent decision, *United States v. Garrett*, 24 F.4th 485 (5th Cir. 2022), the Fifth Circuit explored the divisibility of the Texas robbery statute.  The *Garrett* Court's analysis reinforces the government's argument that the Court should look

not only to state-law authority on juror unanimity but also to the statutory structure, the

differing mens rea requirements, and the varying courses of conduct in the Texas murder

statute's subsections to evaluate its divisibility.  Key to determining divisibility is

"whether the statute sets out one or more elements of the offense in the alternative—for

example, stating that burglary involves entry into a building or an automobile."

*Descamps*, 570 U.S. at 257 (emphasis in original); *see also id*. at 265 n.2 (stating "[w]hen

a state law is drafted in the alternative, the court merely resorts to the approved

documents and compares the elements revealed there to those of the generic offense").

Here, the Texas murder statute contains an "or" between its subdivisions, meaning that it

was drafted "in the alternative."  Although a person can only kill another person one time

and thus "murder"—however committed—is "one crime," each subsection of the Texas

murder statute sets forth a different course of conduct with distinctive elements, including

differing mens rea requirements.  Accordingly, the Court should look beyond the juror-

unanimity question and find the statute divisible.

The statutory language and the attendant caselaw describing the elements of each

subdivision of the Texas murder statute show that while all three offenses are entitled

"murder" because of the common result of the offense, each contains distinct elements,

proscribes different forms of conduct, and requires different proof.  Calling the three

subsections "means" would ignore the *Descamps* definition of means, because means are

facts "that by definition [are] not necessary to support a conviction."  *Descamps*, 570

U.S. at 266 n.3 (emphasis in original).  The Texas murder statute has "multiple

alternative elements" delineated by its three subdivisions, each having a distinct set of

14

elements that must be satisfied to support a conviction.  It is, therefore, divisible.  *See Mathis*, 579 U.S. at 505.

Finally, here, Vickers was convicted of intentional murder as described in Texas Penal Code § 19.02(a)(1) (1973).  The indictment, to which he pled guilty, states that Vickers "knowingly and intentionally cause[d] the death of [the victim], an individual, by striking the deceased with bottles and boards."  (15-CV No. 20 at 3.)  Intentional murder, which requires a mens rea of knowledge or intent, qualifies as a violent felony after *Borden v. United States*, 141 S. Ct. 1817 (2021).  Accordingly, Vickers's conviction required the use of violent force as an element and thereby qualifies as a violent felony under the ACCA to this day.

### C.   Alternatively, all subdivisions of the Texas murder statute continue to qualify as violent felonies after *Borden*.

Throughout the seven years of litigation in this case, the parties have not disputed that Texas intentional murder and bodily-injury murder have as an element the use, attempted use, or threatened use of force.  If the Court finds that the statute is not divisible, the only provision requiring further analysis under *Borden* is Texas felony murder.

In *Borden*, the Supreme Court held that offenses that require mere ordinary recklessness do not qualify as violent felonies under ACCA's elements clause.  141 S. Ct. at 1834.  The *Borden* court reasoned that reckless conduct does not meet the standard for a "violent felony" because "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual."  *Id*.

at 1825.  However, the Supreme Court only considered whether ordinary reckless conduct satisfies the elements clause; it expressly declined to reach whether offenses that may be committed with mental states between ordinary recklessness and knowledge, or "extreme recklessness," can qualify as crimes of violence.  *Id*. at 1825 n.4.  Because it was unnecessary before *Borden*, the government did not consider whether the commission of an act clearly dangerous to human life that causes death could constitute extreme recklessness and, in turn, have the use of force against the person of another as an element.

In the wake of *Borden*, other circuit courts addressing various murder statutes have found that where a murder statute includes malice, depraved heart, or a wanton disregard of human life that statute's mens rea is extreme recklessness,[9] and those statutes have the use of force against another person as an element.  Looking to the Supreme Court's definitions and caselaw from the Fifth Circuit, other circuits, and Texas state courts, Texas felony murder likewise requires extreme recklessness.

In *Voisine v. United States*, 136 S. Ct. 2272, 2278-79 (2016), the Supreme Court held that "use" means the "act of employing" and "the force involved . . . must be volitional."  Building on *Voisine*, the *Borden* court construed the statutory language requiring the use of force "against the person of another" to require that "the perpetrator direct his action at, or target, another individual."  *Id*. at 1825.  Taken together, for a

---

[9] *See United States v. Harrison*, 54 F.4th 884, 889 (6th Cir. 2022); *United States v. Begay*, 33 F.4th 1081 (9th Cir. 2022); *United States v. Manley*, 52 F.4th 143, 149-50 (4th Cir. 2022); *United States v. Alvarado-Linares*, 44 F.4th 1334, 1344 (11th Cir. 2022).  These cases are discussed in detail below.

16

statute to qualify as a force-clause ACCA predicate, the conviction's statutory elements must include the volitional employment of violent physical force that is directed at another person and is committed with a mens rea higher than ordinary recklessness.

To prove the offense of Texas felony murder, in addition to the other elements, the state must show that the defendant committed "an act clearly dangerous to human life that cause[d] the death of an individual." Tex. Penal Code § 19.02(b)(3). In its general definitions, Texas law states that a person commits a criminal offense "only if he voluntarily engages in conduct." Texas Penal Code § 6.01(a). "Voluntarily" in this context refers to volitional physical body movement and "means the absence of an accidental act." *Alford v. State*, 866 S.W.2d 619, 624 (Tex. Crim. App. 1993). Further, an objective standard is used to evaluate whether an act is clearly dangerous to human life. *Accord Lugo-Lugo*, 650 S.W.2d at 81 (holding that an individual could not be convicted of murder under the serious-bodily-injury provision unless the act resulting in death was objectively clearly dangerous to human life).

Looking next to Fifth Circuit and state case law, it is apparent that the "act clearly dangerous to human life" must be committed with extreme recklessness and obvious disregard for human life. The Fifth Circuit, considering whether Texas murder was an enumerated offense under the immigration statutes, observed that Texas's "requirement of 'an act clearly dangerous to human life' that causes someone's death arguably limits the rule of dangerous felonies and conduct showing extreme indifference to human life." *United States v. Quinonez-Saa*, 741 F. App'x 973, 976 (5th Cir. 2018). That conclusion is further supported by Texas state-court precedent. "The purpose of the felony murder

statute is to impose criminal responsibility on a person for the consequences of his felonious dangerous and violent criminal conduct." *Strickland v. State*, 193 S.W.3d 662, 667 (Tex. App.-Fort Worth 2006) (citing *Lawson v. State*, 64 S.W.3d 396, 398-99 (Tex. Crim. App. 2001) (Cochran, J., concurring)).  Further, in *Rodriguez v. State*, 953 S.W.2d 342-50, 354 (Tex. App.-Austin 1997), the court discussed the history of Texas felony murder and noted that Texas's felony-murder statute comports with characterizing homicide as murder "if the killer acted with reckless and wanton disregard of an obvious risk to human life."  (internal citation omitted).  Accordingly, to be guilty of Texas felony murder (in addition to the other elements not at issue here), the defendant must use violent, deadly force to commit an act that is clearly and objectively dangerous to human life that causes the death of another person, and that conduct is undertaken with wanton disregard of an obvious risk to human life.  These requirements are consistent with a mens rea of extreme recklessness, and accordingly, Texas felony murder qualifies as an ACCA predicate under the elements clause.

Other circuit courts have found that where a murder statute includes malice, depraved heart, or a wanton disregard of human life that statute's mens rea is extreme recklessness and, in turn, has force against another person as an element.  For instance, in *United States v. Harrison*, 54 F.4th 884, 889 (6th Cir. 2022), the Sixth Circuit held that a Kentucky complicity-to-commit-murder conviction, which required "wantonly engag[ing] in conduct which creates a grave risk of death," qualified as a serious violent felony under the elements clause of 18 U.S.C. § 3559(c).  *Id.* (citing Ky. Rev. Stat. §507.020).  The *Harrison* court further observed that, "murder always requires the use of

18

physical force…   A victim only dies if some 'physical force' damages his body so severely that the body no longer functions."  54 F.4th at 889.  The court further found, "a person ca[not] cause the death of another intentionally or wantonly without using physical force."  *Id*.

Similarly, the Ninth Circuit in *United States v. Begay*, 33 F.4th 1081 (9th Cir. 2022), found that the malice-aforethought requirement of federal second-degree murder indicates that "rather than acting with ordinary recklessness, the defendant acts with recklessness that rises to the level of extreme disregard for human life."  Likewise, in *United States v. Manley*, 52 F.4th 143, 149-50 (4th Cir. 2022), the Fourth Circuit held that Virginia second degree murder was a crime of violence because the defendant's conduct must be expressly or impliedly "malicious" and cause death.  There, malice can be implied by conduct that is "so harmful" to the victim as to support an inference of malice and includes "reckless behavior so willful and wanton, so heedless of foreseeable consequences, and so indifferent to the value of human life that it supplies the element of malice," and such a mens rea is "extreme recklessness."  *Id*. at 150 (quoting *Watson-Scott v. Commonwealth*, 298 Va. 251, 835 S.E.2d 902, 904 (2019)).  Finally, in *United States v. Alvarado-Linares*, 44 F.4th 1334, 1344 (11th Cir. 2022), the Eleventh Circuit considered whether Georgia malice murder qualified as a crime of violence.  There, implied malice exists "where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart."  *Id*. (citing O.C.G.A. § 16-5-1(b)).

Texas felony murder and the statutes addressed in these out-of-circuit cases have analogous elements and demonstrate that the mens rea required by Texas felony murder

19

is, likewise, one of extreme recklessness.   Accordingly, Texas felony murder (in addition to the other elements not at issue here) requires a volitional physical act that is clearly dangerous to human life and that is undertaken with wanton disregard of the obvious risk to human life—with *extreme recklessness*.  And that act included violent, deadly force directed at another causing the ultimate physical injury—death.  For these reasons, Vickers's Texas murder conviction still qualifies as a violent felony supporting his ACCA sentence.

**3.      CONCLUSION**

The Court should dismiss Vickers's successive motion for lack of jurisdiction under *Wiese*, or, alternatively, determine on the merits that Vickers's Texas murder conviction qualifies as an ACCA predicate.

Respectfully submitted,

Leigha Simonton
United States Attorney
*/s/ Amy J. Mitchell*
Amy J. Mitchell
Assistant United States Attorney
Texas Bar No. 24029734
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8771
amy.mitchell@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 2, 2023, I filed this response with the clerk of court for the U.S. District Court, Northern District of Texas using the electronic filing system which will also serve Vickers's counsel, J. Matthew Wright.

*/s/ Amy J. Mitchell*
Amy J. Mitchell
Assistant United States Attorney
